Henry A. MOCKELMANN, III,
Plaintiff–Appellant,

v.

Connie L. MOCKELMANN,
Defendant–Appellee.

No. 04CA0739.

Colorado Court of Appeals,
Div. V.

Aug. 11, 2005.

See also 121 P.3d 335, 2005 WL 1903852.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2004.

Sparks Willson Borges Brandt & Johnson, P.C., Stephen A. Hess, Colorado Springs, Colorado, for Plaintiff–Appellant.

Recht & Kornfeld, P.C., Daniel N. Recht, Heather R. Hanneman, Denver, Colorado, for Defendant–Appellee.

DAVIDSON, Chief Judge.

Henry A. Mockelmann, III (husband) appeals from the judgment dismissing his tort action against Connie L. Mockelmann (wife). We affirm.

The marriage between husband and wife was dissolved in 1998 in the City and County of Denver. A special master issued findings of fact, conclusions of law, and recommendations, which the trial court adopted. Wife was awarded the farming business that had been operated during the marriage and substantial personal property.

In July 2000, wife filed a motion to compel the delivery of certain equipment and personal property awarded to her. Husband was ordered to turn over various delineated items to wife. Thereafter, a contempt citation was issued, and in July 2001 husband was ordered to return, replace, or pay wife the value of the missing items and to replace two substandard pieces. A minute order, dated July 31, 2001, shows that husband paid wife $131,888 for property she alleged had not been turned over and he delivered some unspecified items to her.

Arguing that wife later stole a substantial number of the missing items for which she had been paid or, alternatively, lied during the prior contempt proceedings, husband filed a complaint in El Paso County on April 2, 2003, asserting civil theft, conversion and other related claims. Upon wife's motion, venue was transferred to Denver. Wife then filed a motion to dismiss, arguing that the claims were barred by res judicata and that the civil court should decline to exercise any jurisdiction it may otherwise have because the claims involved marital assets that had been the subject of the prior dissolution action.

The court agreed with wife and, on summary judgment, dismissed husband's claims with prejudice to the filing of a separate action and without prejudice to his pursuing the issues in the dissolution case. Husband contends that this was error. We disagree.

■ Summary judgment is appropriate when the pleadings and supporting documents demonstrate that no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. An appellate court's review of a trial court's order granting a motion for summary judgment is de novo. *Ryder v. Mitchell,* 54 P.3d 885 (Colo.2002).

At oral argument, husband conceded that to the extent his claims depended on a finding that wife lied at the July 2001 contempt hearing, they are barred. We agree with husband that the determination at the contempt hearing that wife was not in possession of the disputed property cannot be relitigated. *See Argus Real Estate, Inc. v. E–470 Pub. Highway Auth.,* 109 P.3d 604, 608–09 (Colo.2005) (claim may be precluded where it was or could have been litigated in a prior proceeding).

■ Husband maintains, however, that because he alleges that wife stole the disputed property after he had paid her for it pursuant to the July 2001 contempt order, he is not barred from relief by the doctrine of res judicata. He further contends that he is entitled to assert independent civil claims for theft and related torts. We have determined today in a related action that husband is not barred from seeking equitable relief from the dissolution court based on these allegations against wife. *See In re Marriage of Mockelmann,* 121 P.3d 335, 2005 WL 1903852 (Colo. App. No. 04CA0760, Aug. 11, 2005). However, we agree that the trial court properly refused to hear husband's tort claims.

■ A court "which properly acquires jurisdiction of the parties and subject matter in a dissolution action retains that jurisdiction until all matters arising out of the litigation are resolved." *Gonzales v. Dist. Court,* 629 P.2d 1074, 1075 (Colo.1981) (contempt for

failure to comply with a dissolution court's order is not a separate proceeding but a continuance of the dissolution action); *see also In re Marriage of Nussbeck,* 974 P.2d 493, 497 (Colo.1999).

Here, husband's claims concern property that was the subject of previous orders of the dissolution court. It is undisputed that the property that was the basis for husband's civil claims in this case was initially awarded to wife in the dissolution action and, later, served as the predicate for the contempt finding and order that husband either deliver the disputed property to wife or pay her for it. That order, however, did not indicate the ownership status of the property if husband chose the latter option.

Husband does not dispute the general principle that a court has continuing jurisdiction to enforce its orders. He contends, nevertheless, that because the underlying acts occurred subsequent to permanent orders and the contempt ruling, his claims were properly brought as a separate, independent action at law. We disagree.

To allow for the efficient administration of dissolution cases, policy considerations require that certain claims between divorcing or divorced spouses be brought as separate actions. *See Simmons v. Simmons,* 773 P.2d 602, 605 (Colo.App.1988) ("sound policy considerations preclude either permissive or compulsory joinder of interspousal tort claims, or non-related contract claims, with dissolution of marriage proceedings").

The separation of dissolution proceedings and interspousal damages claims is more efficient primarily because dissolution actions are proceedings in equity and not at law. *See In re Marriage of Lewis,* 66 P.3d 204, 205 (Colo.App.2003) ("All issues raised or presented in a dissolution proceeding are to be resolved by the court sitting in equity without a jury."); *see also* § 14–10–107(6), C.R.S.2004. Consequently, the joinder of such claims would inundate dissolution proceedings with extraneous issues that are difficult to address in the unique context of marital dissolution, such as the right to trial by jury, the adversarial nature of other types of civil cases, and the possibility of contingent fees. *See, e.g., Simmons v. Simmons, supra,* 773 P.2d at 604–05.

These policy considerations are significant when the subject matter of the dispute between the divorced or divorcing parties falls outside the dissolution court's jurisdiction. Thus, in *Simmons,* a spouse was allowed to pursue a separate action at law for personal injuries that occurred during the marriage but were unrelated to the dissolution proceedings. *See also Michaelson v. Michaelson,* 884 P.2d 695, 703 (Colo. 1994) (post-divorce claims for mismanagement of corporation); *In re Marriage of Lewis, supra,* 66 P.3d at 205 (claim involving property characterized as not part of the marital estate); *cf. Gavrilis v. Gavrilis,* 116 P.3d 1272, 1275 (Colo.App.2005) (noting that the damages sought in *Simmons* and *Lewis* were "based on acts wholly independent from, and unassociated with the issues in, the dissolution proceeding").

Here, however, husband's damages claims concern property that has been the subject of at least three previous orders of the dissolution court. We conclude that, under these circumstances, policy considerations require that such claims only be pursued in the dissolution court.

As discussed, the dissolution court has continuing jurisdiction over any matters in the dissolution proceeding that remain unresolved, including enforcement of its orders. *See Gonzales v. Dist. Court, supra,* 629 P.2d at 1075. Thus, there is a ready forum, familiar with the issues between the parties, to hear these claims.

To allow such claims to be addressed in a civil court would be inefficient and costly. For example, here, the dissolution court made all the determinations thus far as to the ownership and possession of the disputed property—the distribution of property at permanent orders; the C.R.C.P. 70 order; the determination at the contempt hearing that husband had, as of July 2001, not yet turned over the property to wife; and the order requiring that husband give the property to wife or pay her for it. The use of a completely separate forum to revisit, interpret, or review these determinations would necessarily increase costs both to the parties and to the judiciary.

Furthermore, an independent, separate action for interspousal claims would provide an

additional forum, and a more contentious environment, to those spouses or ex-spouses eager to prolong their conflict. This is contrary to the express policy of the Uniform Dissolution of Marriage Act. *See* § 14–10–102(2)(a), C.R.S.2004 (underlying purpose of the Act is to "promote the amicable settlement of disputes that have arisen between the parties to a marriage").

In addition, the availability of a separate civil action provides parties with more opportunity to perpetuate disputes long after the entry of permanent orders. This is counter to the strong public policy favoring the finality of judgments. *See In re Marriage of Wolford*, 789 P.2d 459, 460 (Colo.App.1989) (strong public policy exists to assure the finality of judgments, which is especially important in family law matters); *see also Gavrilis v. Gavrilis, supra*, 116 P.3d at 1274 (citing importance of finality in dissolution actions, court barred ex-wife's damages action against former husband as impermissible collateral attack on the dissolution decree).

Here, we conclude that the trial court's order of dismissal was proper. Husband's claims were based on wife's actions as to property that was initially allocated in the permanent orders and was the subject of subsequent enforcement orders issued by the dissolution court. The relief husband effectively seeks is enforcement of the dissolution court's July 2001 contempt order. Therefore, the grant of any relief falls within the continuing jurisdiction of the dissolution court and, we conclude, it should remain there.

Based on our disposition, we do not address husband's contention that the change of venue from El Paso County to Denver constituted an abuse of discretion.

The judgment is affirmed.

Judge DAILEY and Judge STERNBERG * concur.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and